Filed 12/31/19 Certified for Publication 1/28/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | C082841 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201600192456CUPTGDS) |
| v. | |
| SMG HOLDINGS, INC., | |
| Defendant and Respondent. | |

This case concerns whether a binding arbitration clause in an insurance policy issued by plaintiff Philadelphia Indemnity Ins. Co., applies to a third party, defendant SMG Holdings, Inc. The trial court ruled it does not. We conclude it does.

The policy had been issued to Future Farmers of America, which was holding an event inside the Fresno Convention Center. Future Farmers had licensed the use of the convention center from its property manager, SMG. As part of the license, Future Farmers agreed to obtain coverage for itself and to name SMG as an additional insured. Thereafter, Future Farmers obtained a policy from Philadelphia Indemnity, which

1

provided coverage for "managers, landlords, or lessors of premises" as well as for any organization "as required by contract." The policy also contained an arbitration clause for coverage disputes.

During the Future Farmers event, an attendee was injured in the convention center parking lot. When the injured man sued SMG, which also managed the parking lot, SMG tendered its defense to Philadelphia under the policy. Philadelphia refused, believing SMG was not covered under the policy for an injury occurring in the parking lot. After Philadelphia and SMG remained at loggerheads for two years, Philadelphia petitioned the trial court to compel arbitration against SMG. The trial court denied the petition, concluding no evidence was presented that the parties to the policy intended to benefit SMG, and Philadelphia was equitably estopped from claiming SMG was required to arbitrate the dispute.

On appeal, Philadelphia contends (1) the trial court erred in determining SMG was neither a third party beneficiary of the policy, nor equitably estopped from avoiding the policy's arbitration clause; (2) alternatively, the court erred in finding Philadelphia estopped from compelling SMG to arbitrate; and (3) the coverage dispute is encompassed by the arbitration clause and arbitration should be ordered.

We agree that SMG can be compelled to arbitrate. We reverse the judgment, vacate the trial court's order, and direct the trial court to order arbitration of the coverage dispute.

## FACTUAL AND PROCEDURAL BACKGROUND
### The License Agreement & the Philadelphia Policy

In 2009, Future Farmers of America and SMG (the facilities manager) entered into a license agreement for Future Farmers to use the Fresno Convention Center for its 2013 annual convention. As part of that license, Future Farmers was required to "secure and

deliver to SMG" a "comprehensive general liability insurance policy in a form acceptable to SMG," and to name SMG, and the City of Fresno as additional insureds in the policy.[1]

Future Farmers obtained a commercial lines policy from Philadelphia Indemnity. The policy did not expressly name SMG or Fresno as insured. But it included a "deluxe endorsement" extending coverage to "managers, landlords, or lessors of premises" for "liability arising out of the ownership, maintenance or use of that part of the premises leased or rented" to the named insured. It also covered "any person or organization where required by a written contract executed prior to the occurrence" but only for liability arising from the name insured's negligence.

The policy also included a binding arbitration endorsement. It provided in relevant part: "If we and *the insured* do not agree whether coverage is provided under this Coverage Part for a claim made against *the insured*, then either party may make a written demand for arbitration."[2] (Italics added.)

### The Parking Lot Injury & the Rejected Tender

During the Future Farmers of America event, a man was injured in the parking lot of the Fresno Convention Center. The man was an attendee, and while walking in the parking lot, he tripped on a large pothole, hit his head on a car, and suffered serious injuries.

---

[1] The license agreement included an exhibit listing the areas Future Farmers was authorized to use in the convention center. The parking lot was not included.

[2] The standard policy defines "insured" as a person or organization qualifying under "Section II — Who Is An Insured." Section II is not part of the record on appeal, but the deluxe endorsement, which is in the record, amends Section II to name additional insureds: "Each of the following is also an insured . . . ." It goes on to name "Managers, Landlords, or Lessors of Premises," as well as those covered "As Required by Contract." We discuss this policy language, *post*.

The injured man sued Fresno as well as SMG.[3]  The man's employer also sued Fresno and SMG to recover workers compensation benefits paid.  Fresno and SMG tendered their defense to Philadelphia Indemnity, under the policy issued to Future Farmers.[4]  In doing so, counsel for SMG wrote:  "I look forward to receiving confirmation from you that [Future Farmers of America] and Philadelphia Insurance Company will provide a full defense and indemnity in this matter to SMG Holdings, Inc. and the City of Fresno . . . ."

Philadelphia rejected the tender.[5]  It explained that while the policy covers owners and landlords, it does so only for liability arising from the ownership, maintenance, or use of the leased premises.  Similarly, the policy covers organizations where required by contract — but only for liability arising from the named insured's negligence.  And as to the parking lot injury, Future Farmers was not authorized to use the parking lot for its event; SMG had sole responsibility for maintaining the parking lot and collecting fees for its use.  And nothing indicated any negligence on Future Farmer's part in causing the man's fall.  Therefore, neither Fresno nor SMG qualified "as an additional insured under the policy with respect to the [parking lot injury] litigation."

### The Petition to Compel Arbitration

SMG and Philadelphia continued to correspond about the matter, and in 2016, after failing to agree on coverage, Philadelphia demanded arbitration of the coverage

---

[3]  The injured man later amended the pleadings to name Future Farmers of America as a party.

[4]  In a follow up letter, SMG's counsel clarified the tender was "made under both the policy issued by Philadelphia Insurance Company to Future Farmers of America (FFA) and *under the licensing agreement between FFA and SMG*."

[5]  Originally, only Fresno tendered its defense, which was denied.  When SMG subsequently tendered its defense, Philadelphia responded that the rationale for rejecting Fresno's tender also applied to SMG.

4

dispute, under the binding arbitration endorsement. When SMG resisted, Philadelphia petitioned the superior court to compel arbitration against SMG. Philadelphia argued that under the Federal Arbitration Act, the court's role is limited to determining whether a valid agreement to arbitrate exists, and if so, whether it encompasses the dispute at issue. Philadelphia maintained that SMG sought benefits under a policy with an arbitration provision and is therefore bound by that arbitration provision because equitable estoppel precludes a party from claiming benefits of a contract while attempting to avoid its burdens. And this being a coverage dispute, the arbitration provision applies.

In opposition, SMG argued inter alia that Philadelphia was estopped from demanding arbitration because, having previously determined SMG was neither an insured nor a third party beneficiary under the policy, it could not claim SMG was an "insured" for purposes of arbitration. SMG also argued that it had not knowingly exploited the policy because Philadelphia had steadfastly precluded it from doing so.

The trial court denied the petition, concluding Philadelphia had failed in its burden to show a valid binding arbitration agreement between it and SMG. It explained that the party seeking to compel arbitration must show an agreement to arbitrate. It noted that "there is no dispute that SMG was not a party to the arbitration agreement." Nevertheless, a nonsignatory may be compelled to arbitrate on grounds such as estoppel or their status as a third party beneficiary.

The trial court rejected the contention that SMG was a third party beneficiary, concluding Philadelphia had offered no evidence of the circumstances and negotiations of the parties. And no evidence showed intent to benefit SMG. Without elaboration, it also rejected Philadelphia's contention that equitable estoppel applied to SMG. Instead, the court concluded that Philadelphia was estopped from claiming SMG was an insured under the policy for purposes of compelling arbitration, because Philadelphia had denied SMG's tender claiming SMG was not an insured under the policy. The court stated that Philadelphia, "cannot take such inconsistent positions."

5

**DISCUSSION**

On appeal, Philadelphia contends (1) the trial court erred in determining SMG was neither a third party beneficiary of the policy, nor equitably estopped from avoiding its arbitration clause; (2) alternatively, the court erred in finding Philadelphia estopped from compelling SMG to arbitrate; and (3) the coverage dispute is encompassed by the arbitration clause and arbitration should be ordered. We agree with all three contentions.

**A. Federal Arbitration Act, State Law Governing Non-signatories and Standard of Review**

Philadelphia asserts, without challenge by SMG, that it conducts business across state lines and therefore the Federal Arbitration Act applies. (See *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 657 ["The FAA applies when the contract 'evidences a transaction involving interstate commerce.' "].) Under that federal act, a court's role "is limited 'to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.' " (*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC* (9th Cir. 2017) 871 F.3d 791, 796.)

But whether a contract may be enforced by or against a nonsignatory to the contract is determined by principles of state law. (*Rajagopalan v. NoteWorld*, LLC (9th Cir. 2013) 718 F.3d 844, 847 citing *Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 631 [173 L.Ed.2d 832]; see also *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 964.) To that, "there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.' " (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1513.)

Under the third party beneficiary theory, a nonsignatory may be compelled to arbitrate where the nonsignatory is a third party beneficiary of the contract. (*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069

6

(*Crowley*).)  Whether a nonsignatory is an intended third party beneficiary to the contract is determined from the parties' intent, as gleaned from the contract as a whole and the circumstances under which it arose.  (*Epitech, Inc. v. Kann* (2012) 204 Cal.App.4th 1365, 1371–1372.)

Under the equitable estoppel theory, a nonsignatory " 'is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause.'"  (*Crowley*, *supra*, 158 Cal.App.4th at p. 1070.)  Equitable estoppel, thus, " 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.' "  (*Comer v. Micor, Inc.* (9th Cir. 2006) 436 F.3d 1098, 1101.)

"The party seeking arbitration bears the burden of proving the existence of an arbitration agreement . . . ."  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)  And on appeal, where there is no disputed extrinsic evidence (as the parties agree is the case here) a trial court's denial of a petition to enforce an arbitration agreement is reviewed de novo.  (*Suh v. Superior Court, supra,* 181 Cal.App.4th at p. 1511; *Pinnacle* at p. 236.)

## B.  Analysis

### 1.  Third Party Beneficiary

We conclude that SMG is an intended third party beneficiary of the policy.  The license agreement between SMG and Future Farmers obligated Future Farmers to obtain coverage "in form acceptable to SMG" and to name SMG as an additional insured.[6]  The

---

[6] SMG shoehorns an argument that the license agreement is inadmissible parole evidence.  This contention is forfeited as SMG never challenged the admission of the license agreement below.  Indeed, SMG included the license agreement as part of an attachment to its opposition to the petition to compel arbitration.  And it relied on the license agreement in support of its tender, writing to Philadelphia:  "the tender of defense on behalf of SMG and the City of Fresno were made under both the policy issued by Philadelphia Insurance Company to Future Farmers of America (FFA) and *under the*

7

policy Future Farmers obtained covered, via a "deluxe endorsement," "*managers, landlords, or lessors of the premises*" as well as "any person or organization where required by a written contract executed prior to the occurrence . . . ." (Italics added.) Read together, the license and policy show SMG was an intended beneficiary of the policy. (See *Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 716 [intent to name third party beneficiary shown through lease contract requiring the third party beneficiary to be designated as an additional insured]; see also *County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 415 [In interpreting an insurance contract, the goal is to give effect to the parties' mutual intention; clear and explicit contractual language governs]; Civ. Code, § 1639 ["When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."].)

That SMG was an intended beneficiary is bolstered by SMG's subsequent attempt to avail itself to coverage under the policy by tendering its defense to Philadelphia: "I look forward to receiving confirmation from you that [Future Farmers of America] and Philadelphia . . . will provide a full defense and indemnity in this matter to SMG Holdings, Inc. . . . ."

### 2. Equitable Estoppel

SMG's tender also constitutes a knowing claim of contract benefits, namely defense and indemnity. Accordingly, SMG is estopped from disclaiming applicable contract burdens such as the arbitration clause. (See *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 269 [" '[A] party may be estopped from asserting that the

---

*licensing agreement between FFA and SMG.*" (See fn. 4, *ante*.) And in any event, the parole evidence rule "does not . . . prohibit the introduction of extrinsic evidence 'to explain the meaning of a written contract . . . [if] the meaning urged is one to which the written contract terms are reasonably susceptible.' " (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.)

8

lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him' "].)

SMG, however, contends its tender did not constitute claiming a benefit or seeking enforcement of the policy for estoppel purposes. It maintains a tender is not an enforcement action — adding that only Philadelphia brought the civil enforcement action; SMG merely "informally" tendered its defense via letter. We are not persuaded. We know of no authority for the proposition that to seek the benefit of a policy one must bring a civil action to enforce it (and concomitantly a defense tender is insufficient). Nor could we find such a proposition cogent. Indeed, it defies logic to require a named insured demanding coverage to submit coverage disputes to arbitration, while freeing from that obligation an unnamed insured demanding the same coverage. SMG's tender under the policy — requesting "a full defense and indemnity in this matter" — can only be interpreted as a claim to the policy's benefits. As such SMG is estopped from disclaiming the arbitration provision of the policy.

### 3. The Arbitration Agreement's Scope

Finally, the arbitration agreement encompasses the dispute at issue. The arbitration clause applies when Philadelphia and "the insured" fail to agree on "whether coverage is provided under this Coverage Part for a claim made against the insured . . . ." And the crux of SMG and Philadelphia's dispute is whether the policy covers the claim arising from the parking lot injury. Therefore, the petition to compel arbitration should have been granted.

SMG, nevertheless, argues the arbitration clause cannot apply because SMG is not "the insured" and the clause applies only when, "we [Philadelphia] and *the insured* do not agree whether coverage is provided . . . ." (Italics added.) SMG is mistaken. The policy defines an "insured" as "any person or organization qualifying as such under Section II." The "Deluxe Endorsement," in turn, modifies Section II to name additional insureds:

9

"Each of the following is also an insured." The endorsement goes on to include "Managers, Landlords, or Lessors of Premises," as well as those covered "As Required by Contract." Thus, by the policy's terms, SMG is an "insured" by virtue of it being a manager and a party required by contract to be covered. That SMG is not the named insured is of no consequence.

### 4. Equitable Estoppel Applied to Philadelphia

SMG also argues that Philadelphia's consistent rejection of its tenders demonstrates that Philadelphia has taken the inconsistent position that SMG is not an insured. Not so. As Philadelphia's explanation in rejecting the tender makes clear, Philadelphia was not suggesting that SMG was in no way contemplated for coverage under the deluxe endorsement — indeed, Philadelphia's rejection specifically referenced coverage for landlords as well as those as required by contract. Rather, Philadelphia concluded that the parking lot injury itself did not fall within the circumscribed coverage afforded to entities covered by the deluxe endorsement. Indeed, in rejecting the tender, Philadelphia stated SMG did not qualify "as an additional insured under the policy *with respect to the* [parking lot injury] *litigation.*"[7] (Italics added.)

### DISPOSITION

The order denying the petition to compel arbitration is vacated. The trial court is directed to issue a new order granting the petition to compel arbitration. Philadelphia

---

[7] Within this argument, SMG raises an unconscionability argument, the gist of which is that arbitration would either determine SMG is an "insured," entitled to coverage, or not an insured, in which case the arbitration clause should not have applied to SMG. We have no duty to respond to improperly headed "lurking" arguments and in any event find the argument meritless. (See *Imagistics Intern., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 593, fn.10.) The argument proceeds from the premise that if SMG is an "insured" for purposes of the arbitration clause, it is also entitled to coverage for the injury. But as explained *ante,* "insured" is defined by the terms of the policy and is separate from the question of whether a particular injury is covered.

10

Indemnity Ins. Co. shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                            /s/
                                    MURRAY, Acting P. J.



We concur:



    /s/
DUARTE, J.



    /s/
HOCH, J.


11

Filed 1/28/20

IN THE

# Court of Appeal of the State of California
## IN AND FOR THE
## THIRD APPELLATE DISTRICT


PHILADELPHIA INDEMNITY
INSURANCE COMPANY,
    Plaintiff and Appellant,
    v.
SMG HOLDINGS, INC.,
    Defendant and Respondent.

                       C082841
                       Sacramento County
                       No.   34201600192456CUPTGDS


BY THE COURT:

    Appellant's request to publish the opinion filed on December 31, 2019, is granted.


                                       P.J.
                    MURRAY, Acting
_____

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Sacramento County, Steven H. Rodda, Judge.  Affirmed.

Nielsen Katibah LLP, James C. Neilsen, Daniel N. Katibah and Thomas H. Nienow for Plaintiff and Appellant.

Pagliero & Associates, James R. Pagliero and Candace M. Pagliero for Defendant and Respondent.

Clapp, Moroney, Vucinichi, Beeman & Scheley, Christopher J. Beeman for Defendant and Respondent.

Morales, Fierro & Reeves, Ramiro Morales for Defendant and Respondent.